IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-437-D

| | | |
|---|---|---|
| FITZGERALD FRUIT FARMS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ASEPTIA, INC., WRIGHT FOODS, INC., | ) | |
| and WORTH HARRIS, | ) | |
| | ) | |
| Defendants. | ) | |

On September 7, 2018, Fitzgerald Fruit Farms LLC ("Fitzgerald Farms" or "plaintiff") filed a complaint against Aseptia, Inc. ("Aseptia"), Wright Foods, Inc. ("Wright Foods"), and Worth Harris ("Harris"; collectively "defendants") [D.E. 1].[1] On November 13, 2018, Harris moved to dismiss Fitzgerald Farms's complaint and moved to strike portions of the complaint [D.E. 17] and filed a memorandum in support [D.E. 18]. On December 18, 2018, Fitzgerald Farms responded in opposition [D.E. 21]. On January 16, 2019, Harris replied [D.E. 25]. On January 24, 2019, Fitzgerald Farms moved for leave to file a sur-reply [D.E. 26]. On March 8, 2019, the court granted the motion and received Fitzgerald Farm's sur-reply [D.E. 26-1] into the record [D.E. 31]. As explained below, the court grants Harris's motion to dismiss.

I.

Fitzgerald Farms's complaint concerns an alleged agreement between Fitzgerald Farms and defendants. Aseptia and Wright Foods are North Carolina and Delaware corporations, respectively,

---

[1] On January 10, 2019, Fitzgerald Farms moved for entry of default against Aseptia and Wright Foods [D.E. 23, 24]. On February 19, 2019, the court entered default under Rule 55(a) of the Federal Rules of Civil Procedure against Aseptia and Wright Foods [D.E. 28, 29].

and Harris is the chairperson of Aseptia's board. See Compl. [D.E. 1] ¶¶ 2–4. Fitzgerald Farms alleges that defendants hired it "to assist [defendants] in the purchase, delivery, storage, and treatment of apples for the 2014 apple pack." Id. ¶ 7. On September 10, 2014, Sean Lennon ("Lennon"), the president and owner of Fitzgerald Farms, met with Harris and other representatives of the defendants to discuss payment and other terms of their relationship. See id. ¶¶ 6, 8. According to Fitzgerald Farms, the parties agreed that Fitzgerald Farms would assist defendants in acquiring 8,500,000 pounds of apples by December 2014. See id. ¶ 9. Fitzgerald Farms would initially "pay the growers for the apples and for services such as shipping and treatment of the apples," and defendants would pay Fitzgerald Farms "in accordance with the agreed upon rates." Id.; see [D.E. 1-1] 3. Because Fitzgerald Farms had "concerns regarding payment," Harris assured Lennon that Fitzgerald Farms "would be paid in full" for its work "with '[Harris's] money.'" Compl. [D.E. 1] ¶ 10.

Fitzgerald Farms alleges that it performed the work as defendants instructed. See id. ¶¶ 14–15. Fitzgerald Farms submitted invoices for payment to Aseptia. See id. ¶ 16; [D.E. 1-5]. Defendants, however, failed to pay Fitzgerald Farms in full. See Compl. [D.E. 1] ¶ 17. Fitzgerald Farms alleges that, during the summer of 2015, defendants assured it that defendants would pay in full after defendants sold Wright Foods and that any attempt by Fitzgerald Farms to involve lawyers in the dispute would complicate payment. See id. ¶¶ 17–18. On July 8, 2015, defendants instructed Fitzgerald Farms "to dispose of hundreds of tons of left-over apples being held in storage on [d]efendants' behalf." Id. ¶ 19. Fitzgerald Farms did so, thereby incurring disposal charges of $124,150. See id.

Despite defendants' representations, defendants failed to pay in full. See id. ¶¶ 17, 23. On September 18, 2015, defendants made their last payment to Fitzgerald Farms. See id. ¶ 20. On

2

March 4, 2016, defendants informed Fitzgerald Farms that Aseptia would pay the remaining balance owed to Fitzgerald Farms. See id. ¶ 22; [D.E. 1-3]. Nevertheless, Aseptia did not pay the balance owed to Fitzgerald Farms. See id. ¶ 23.

On September 7, 2018, Fitzgerald Farms filed a complaint against defendants alleging seven causes of action: breach of contract, open account, fraud, negligent misrepresentation, quantum meruit and unjust enrichment, piercing the corporate veil, and unfair trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 et seq. See id. ¶¶ 27–64.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, plaintiffs' allegations must "nudge[ ] their claims," Twombly,

3

550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Subject-matter jurisdiction is based on diversity of citizenship, and the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). The parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id. at 369. If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Id. (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

4

appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted). Moreover, in predicting how the highest court of a state would address an issue, a federal court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); Wade v. Danek, Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

As for Fitzgerald Farms's breach of contract claim in count one, under North Carolina law, a breach of contract claim has two elements: (1) the existence of a valid contract and (2) a breach of the terms of that contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Cater v. Barker, 172 N.C. App. 441, 445, 617 S.E.2d 113, 116 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 845 (2000). Harris contends that he is not a party to the contract in his individual capacity. Thus, Harris argues that he cannot be held liable for any breach that occurred.

"Before a valid contract can exist, there must be mutual agreement between the parties as to the terms of the contract." Mosely v. WAM, Inc., 167 N.C. App. 594, 598, 606 S.E.2d 140, 143 (2004); see Walker v. Goodson Farms, Inc., 90 N.C. App. 478, 486, 369 S.E.2d 122, 126 (1988). "An authorized agent who enters into a contract on behalf of a disclosed principal generally is not personally liable to third parties since the contract is with the principal." Baker v. Rushing, 104 N.C. App. 240, 248, 409 S.E.2d 108, 112 (1991); see Walston v. R. B. Whitley & Co., 226 N.C. 537, 540–41, 39 S.E.2d 375, 377 (1946); Advanced Internet Techs., Inc. v. McGarrity, No. 5:13-CV-638-D, 2014 WL 4384658, at *2 (E.D.N.C. Sept. 4, 2014) (unpublished).

5

Even viewing the evidence in the light most favorable to Fitzgerald Farms, Fitzgerald Farms fails to plausibly allege that Harris is a party to the contract. Harris was the chairperson of Aseptia's board and attended the meeting on September 10, 2014, in that capacity, and Fitzgerald Farms knew that Harris represented Aseptia during that meeting. Fitzgerald Farms's allegation that Harris would pay with his money, by itself, does not plausibly allege that Harris intended to incur personal responsibility for any obligations under the contract. See Walston, 226 N.C. at 540–41, 39 S.E.2d at 377. Moreover, Aseptia—not Harris—contacted Fitzgerald Farms concerning the contractual relationship. See [D.E. 1-1] 2. Fitzgerald Farms also billed Aseptia—not Harris. See [D.E. 1-5]. Accordingly, Harris is not a party to the contract, and the court grants Harris's motion to dismiss count one.[3]

B.

As for Fitzgerald Farms's open account claim in count two, "[a]n open account results where the parties intend that the individual transactions are to be considered as a connected series rather than as independent of each other, a balance is kept by adjustments of debits and credits, and further dealings between the parties are contemplated." Hudson v. Game World, Inc., 126 N.C. App. 139, 144, 484 S.E.2d 435, 439 (1997); see J.M. Smith Corp. v. Matthews, 123 N.C. App. 771, 774–75, 474 S.E.2d 798, 800–01 (1996). An open account action is premised on an agreement between parties. As discussed, Harris was not a party to the contract at issue. Accordingly, the court grants Harris's motion to dismiss count two.

---

[3] To the extent that Fitzgerald Farms seeks to hold Harris responsible as a guarantor, such an agreement is unenforceable unless it is in writing. See N.C. Gen. Stat. § 22-1; Ebb Corp. (Dare Concrete, Inc.) v. Glidden, 87 N.C. App. 366, 372, 360 S.E.2d 808, 810–11 (1987) (Becton, J., dissenting), adopted by 322 N.C. 110, 366 S.E.2d 440 (1988); Terrell v. Kaplan, 170 N.C. App. 667, 670–71, 613 S.E.2d 526, 528–29 (2005). Fitzgerald Farms does not allege that a written guaranty contract exists. See [D.E. 21] 8.

6

C.

As for Fitzgerald Farms's fraud claim in count three, North Carolina law requires plaintiffs to allege five elements to state a claim for actual fraud: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party. See Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007); Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992); Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974); Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc., 989 F. Supp. 2d 471, 476 (E.D.N.C. 2013). Additionally, "any reliance on the allegedly false representations must be reasonable." Forbis, 361 N.C. at 527, 649 S.E.2d at 387; see Johnson v. Owens, 263 N.C. 754, 756, 140 S.E.2d 311, 313 (1965); Laschkewitsch v. Legal & Gen. Am., Inc., 247 F. Supp. 3d 710, 721 (E.D.N.C. 2017), aff'd, 725 F. App'x 252 (4th Cir. 2018) (per curiam) (unpublished).

Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff who alleges a claim for fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, under Rule 9(b), a party must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what they obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quotation omitted); see McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559–60 (4th Cir. 2013); United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 455–61 (4th Cir. 2013); Strum v. Exxon Co., U.S.A., 15 F.3d 327, 331 (4th Cir. 1994). "These facts are often referred to as the who, what, when, where, and how of the alleged fraud." Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc., 888 F.3d 696, 705 (4th Cir. 2018) (quotations omitted).

7

Fitzgerald Farms alleges that defendants made three fraudulent statements: (1) on September 10, 2014, Harris promised Fitzgerald Farms that he would pay in full with his money; (2) on July 8, 2015, defendants promised that Fitzgerald Farms would be paid in full for the costs of disposing of the leftover apples; and (3) defendants promised that Fitzgerald Farms "would be paid in full for the outstanding balance owed to [it] upon the completion of the sale of" Wright Foods. Compl. [D.E. 1] ¶ 39.

As for the second and third statements, Fitzgerald Farms alleges only that the defendants made the allegedly fraudulent statements. Because Fitzgerald Farms fails to "specify who it was accusing of which specific misrepresentations," Fitzgerald Farms fails to allege with particularity a fraud claim against Harris concerning those statements. Bakery & Confectionary Union, 888 F.3d at 705; see Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 197–98 & n.8 (M.D.N.C. 1997).

As for the first statement, "mere unfulfilled promises [generally] cannot be made the basis for an action of fraud" unless the promisor had no intention of carrying out its promise at the time that it was made. Williams v. Williams, 220 N.C. 806, 810, 18 S.E.2d 364, 366 (1942); McKinnon v. CV Indus., Inc., 213 N.C. App. 328, 338, 713 S.E.2d 495, 503 (2011) (quotation omitted); see Davis v. Davis, 236 N.C. 208, 211, 72 S.E.2d 414, 415 (1952); Brandis v. Lightmotive Fatman, Inc., 115 N.C. App. 59, 66–67, 443 S.E.2d 887, 890–91 (1994); Mesimer v. Stancil, 52 N.C. App. 361, 363–64, 278 S.E.2d 530, 532 (1981). Even viewing the evidence in the light most favorable to Fitzgerald Farms, Fitzgerald Farms fails to allege that Harris did not intend to pay Fitzgerald Farms when Harris allegedly made his promise. See McKinnon, 213 N.C. App. at 338, 713 S.E.2d at 503; Mesimer, 52 N.C. App. at 363–64, 278 S.E.2d at 532. "Mere proof of non-performance is not sufficient to establish the necessary fraudulent intent." Williams, 220 N.C. at 811, 18 S.E.2d at 367; see Triad Packaging, Inc. v. Supplyone, Inc., 597 F. App'x 734, 739–40 (4th Cir. 2015)

8

(unpublished); Strum, 15 F.3d at 331. Accordingly, the court grants Harris's motion to dismiss count three.

D.

As for Fitzgerald Farms's negligent misrepresentation in count four, to state a negligent misrepresentation claim, a plaintiff must plausibly allege that it (1) justifiably relied (2) to its detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care. See Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988); Brinkman v. Barrett Kays & Assocs., P.A., 155 N.C. App. 738, 741–42, 575 S.E.2d 40, 43–44 (2003); Jackson v. Minn. Life Ins. Co., 275 F. Supp. 3d 712, 732 (E.D.N.C. 2017); Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275-D, 2011 WL 1134453, at *12–13 (E.D.N.C. Jan. 25, 2011) (unpublished), memorandum and recommendation adopted, 2011 WL 1134447, at *1 (E.D.N.C. Mar. 24, 2011) (unpublished). "[T]he elements of fraud and negligent misrepresentation are similar under North Carolina law." Silicon Knights, Inc., 2011 WL 1134453, at *13. "A principal difference is that a claim for negligent misrepresentation does not require the intent to deceive, but may rest on the failure to use reasonable care in making representations or omissions." Id.

Fitzgerald Farms does not identify any allegedly false information that Harris supplied besides Harris's statement that Fitzgerald Farms would be paid with his money. Even viewing the evidence in the light most favorable to Fitzgerald Farms, Fitzgerald Farms fails to allege that Harris acted negligently in preparing or making his statement or that Harris owed a duty of care to Fitzgerald Farms. Accordingly, the court grants Harris's motion to dismiss count four.[4]

---

[4] Because Fitzgerald Farms fails to plausibly allege the elements of a negligent misrepresentation claim, the court does not address whether the economic loss doctrine bars Fitzgerald Farms's claim.

9

E.

As for Fitzgerald Farms's quasi-contract claim in count five, to state a claim for unjust enrichment, "a person who has been unjustly enriched at the expense of another is required to make restitution to the other." Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988) (quotation omitted). Under North Carolina law, to recover on an unjust enrichment claim, a plaintiff must prove (1) that it conferred a measurable benefit on another party, (2) that the defendant consciously accepted the benefit, and (3) that the plaintiff did not confer the benefit gratuitously or officiously (i.e., not conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances). See id. at 570, 369 S.E.2d at 556; Lake Toxaway Cmty. Ass'n v. RYF Enters., LLC, 226 N.C. App. 483, 490, 742 S.E.2d 555, 561 (2013); Se. Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002); McCabe v. Abbott Labs., Inc., 47 F. Supp. 3d 339, 348 (E.D.N.C. 2014). A plaintiff that establishes an unjust enrichment claim is entitled to "a restitution-type recovery" and need not have "actual damages." Seraph Garrison, LLC ex rel. Garrison Enters., Inc. v. Garrison, 247 N.C. App. 115, 130, 787 S.E.2d 398, 410 (2016).

Even viewing the evidence in the light most favorable to Fitzgerald Farms, Fitzgerald Farms fails to plausibly allege that it conferred a measurable benefit on Harris. Fitzgerald Farms's allegations relate to the defendants generally, and Fitzgerald Farms fails to identify how, if at all, Harris individually benefitted from the work that Fitzgerald Farms performed. See Compl. [D.E. 1] ¶¶ 7, 15, 19 (referring to defendants generally, not Harris). Accordingly, the court grants Harris's motion to dismiss count five.

F.

As for Fitzgerald Farms's UDTPA claim in count seven, to state a claim under the UDTPA, a plaintiff must plausibly allege that "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); Spartan Leasing Inc. v. Pollard, 101 N.C. App. 450, 460–61, 400 S.E.2d 476, 482 (1991). As for the first element, whether an act or practice is unfair or deceptive is a question of law for the court. See Gray, 352 N.C. at 68, 529 S.E.2d at 681; CDI Corp. v. HCL Am., Inc., No. 5:17-CV-550-D, 2019 WL 1083775, at *5 (E.D.N.C. Mar. 7, 2019) (unpublished). A practice is deceptive "if it has the tendency to deceive." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A practice is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." Marshall, 302 N.C. at 548, 276 S.E.2d at 403.

A "mere breach of contract, even if intentional, is not an unfair or deceptive act" by itself. Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006); see PCS Phospate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007); Gray, 352 N.C. at 75, 529 S.E.2d at 685; Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). North Carolina law "does not permit a party to transmute a breach of contract claim into a . . . UDTPA claim . . . because awarding punitive or treble damages would destroy the parties' bargain." PCS Phosphate, 559 F.3d at 224; see Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 346–47 (4th Cir. 1998) (collecting cases); cf. Strum, 15 F.3d at 330. If substantial

11

aggravating circumstances accompany a breach of contract, then those circumstances can give rise to a UDTPA claim. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981); Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700.

Fitzgerald Farms alleges that defendants' misleading statements accompanying Harris's alleged breach of contract constitute substantial aggravating circumstances. See Compl. [D.E. 1] ¶¶ 59–64. Even viewing the allegations in the light most favorable to Fitzgerald Farms, Fitzgerald Farms fails to plausibly allege that substantial aggravating circumstances accompanied Harris's alleged breach of contract. As discussed, Fitzgerald Farms fails to plausibly allege that Harris was a party to the contract, and Fitzgerald Farms fails to allege that Harris made fraudulent statements to Fitzgerald Farms. Accordingly, the court grants Harris's motion to dismiss count seven.

G.

As for Fitzgerald Farms's request in count six to pierce the corporate veil, "[t]he doctrine of piercing the corporate veil is not a theory of liability." Green v. Freeman, 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013). "Rather, it provides an avenue to pursue legal claims against corporate officers and directors who would otherwise be shielded by the corporate form." Id., 749 S.E.2d at 271. Because the court has dismissed all claims against Harris, Fitzgerald Farms cannot separately bring a claim for piercing the corporate veil against him. See id., 749 S.E.2d at 271("There must also be an underlying legal claim to which liability may attach."). Accordingly, the court grants Harris's motion to dismiss count six.

III.

In sum, the court GRANTS Harris's motion to dismiss [D.E. 17], DISMISSES the complaint

12

as to defendant Harris, and DENIES as moot Harris's motion to strike [D.E. 17].

SO ORDERED. This _20_ day of June 2019.

                                                          JAMES C. DEVER III
                                                          United States District Judge